IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JENNIFER STEPHENS, FAYTH BOND, RITA GETTIS, KRISTI MAYO, DEONICA JONES, BELINDA ZACHARY, and TRACEY GENERAL, | CIVIL ACTION FILE NO. |
| Plaintiffs, | 1:13-cv-1528-RWS-JKL |
| v. | |
| THEODORE JACKSON, *Fulton County Sheriff, Individually and in his Official Capacity as the Fulton County Sheriff*, | |
| Defendant. | |

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendant Theodore Jackson's motion for summary judgment, (Doc. 79), and the Plaintiffs' motion to voluntarily dismiss their complaint without prejudice, (Doc. 98). For the reasons discussed herein, I **RECOMMEND** that Plaintiffs' motion (Doc. 98) be **GRANTED**, and that Jackson's motion (Doc. 79) be **DENIED AS MOOT**.

### I.   Procedural history

In May 2013, Plaintiffs filed a complaint against several Defendants, including Jackson. (Doc. 1.) The complaint included claims under Title VII; the

Equal Protection Clause of the Fourteenth Amendment, through 42 U.S.C. § 1983; the Fourth Amendment, through § 1983; and state law for intentional infliction of emotional distress, false imprisonment, and negligent training.  (*Id.*)

On July 8, 2013, Defendants moved to dismiss the complaint for failure to state a claim.  (Doc 6.)  Among the arguments for dismissal, Defendants raised several arguments grounded in different types of immunity from suit.  They argued that: Jackson was entitled to qualified immunity as to all federal claims, (*id.* at 15-18); all Defendants were entitled to sovereign immunity as to all state law claims, (*id.* at 18-20); and Jackson was entitled to official immunity as to all claims, (*id.* at 20-23.)

Magistrate Judge Brill, then assigned to the case, recommended dismissing the County for reasons unrelated to immunity.  (Doc. 9 at 10-18.)  Judge Brill then recommended dismissing the individual capacity federal claims against Jackson based on qualified immunity, but allowing the official capacity federal claims against Jackson to go forward.  (*Id.* at 18-23.)  Judge Brill next recommended dismissing the state law claims against Jackson in his official capacity to be dismissed based on sovereign immunity.  (*Id.* at 23-24.)  Last, Judge Brill recommended dismissing all state law claims against Jackson in his individual capacity based on official immunity.  (*Id.* at 24-27.)  District Judge Story adopted

the report and recommendation after neither party objected.  (Doc. 11.)  As a result, only the Title VII and employment-based § 1983 claims against Jackson in his official capacity survived.  (Doc 9 at 27.)

Following the order on the motion to dismiss, Jackson filed an answer to the remaining claims in December 2013.  (Doc. 13.)  With leave of the Court, Jackson filed an amended answer to the complaint in May 2014.  (Docs. 30, 31.)  In the amended answer, Jackson added the affirmative defense that Plaintiffs' remaining claims were barred by sovereign immunity.  (Doc. 31.)

## II.   The pending motions

Jackson filed the instant motion for summary judgment in August 2015. (Doc. 79.)  Among other reasons for granting summary judgment, Jackson argues that he is entitled to Eleventh Amendment immunity from the § 1983 claim.  (Doc. 79-1 at 6-11.)  He opposes the Title VII claims based on a failure to establish a *prima facie* case of gender discrimination.  (*Id*. at 20-22.)

In lieu of a response to the summary judgment motion, the Plaintiffs have moved to voluntarily dismiss their complaint without prejudice, under Fed. R. Civ. P. 41(a)(2), based on a lack of subject matter jurisdiction.  (Doc. 98.)  They argue that the dismissal should be granted because Jackson will not face any clear legal prejudice should the dismissal be granted, and the fact that the litigation has

reached the summary judgment stage does not bar voluntary dismissal.  (Doc. 98-1 at 13-14.)   They also argue that the imposition of costs in conjunction with dismissal would be inappropriate because all of the products of the federal court litigation can be reused if the suit is filed in state court.  (*Id.* at 15-16.)

The Plaintiffs further assert that the motion to voluntarily dismiss must be granted, because the Court lacks subject matter jurisdiction over the case, and summary judgment would be inappropriate.  (Doc. 98-1 at 16-20.)  They concede, however, that the same jurisdictional argument does not apply to their Title VII claims, but maintain that dismissal would be the appropriate remedy because those claims are too related to the § 1983 claims to be tried separately.  (*Id.* at 20.) Plaintiffs express their intent to file their claims anew in state court, relying on Georgia's renewal statute to ensure that the suit would be timely.  (*Id.*)

Jackson opposes Plaintiffs' motion, asserting that he would suffer clear legal prejudice if it were granted.  (Doc. 101 at 3.)  He argues that the time and expense spent litigating the case would prejudice him.  (*Id.* at 4.)  Jackson asserts that the Plaintiffs have been aware of a sovereign immunity defense since he filed his amended answer and could have moved for voluntary dismissal at an earlier point in the litigation.  (*Id.* at 4-5.)  He further asserts that the Title VII claims, properly within this Court's jurisdiction, should be adjudicated on the merits.  (*Id.* at 6.)

4

### III.   Discussion

### A.   Law governing voluntary dismissals under Rule 41(a)(2)

Under Fed. R. Civ. P. 41(a)(1), a plaintiff may voluntarily dismiss any action without a court order before the opposing party serves an answer or a motion for summary judgment.  After those triggering events, a plaintiff may only voluntarily dismiss an action "by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  Unless such an order states otherwise, such a dismissal is without prejudice.  *Id.*

A district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2).  *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001).  In considering a Rule 41 motion for dismissal without prejudice, the Court "should bear in mind principally the interests of the defendant, for it is the defendant's position that the court should protect." *McCants v. Ford Motor Co.*, 781 F.2d 855, 856 (11th Cir. 1986).  The Court must also, in exercising its discretion, "weigh the relevant equities and do justice." *Arias v. Cameron*, 776 F.3d 1262, 1269 (11th Cir. 2015).  The dismissal should be granted in most cases unless the defendant will suffer clear legal prejudice—in other words, would the defendant lose any substantial right—as a result of the

dismissal, other than the mere prospect of a subsequent lawsuit. *Pontenberg*, 252 F.3d at 1255.

The Eleventh Circuit has held that there is not a *per se* rule that the pendency of a summary judgment motion precludes the granting of a Rule 41(a)(2) dismissal without prejudice. *Pontenberg*, 252 F.3d at 1258. Indeed, the mere attempt to avoid an adverse summary judgment ruling, absent evidence of bad faith, does not constitute "plain legal prejudice." *Id.*

The court may fashion any dismissal under Rule 41(a)(2) "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The attachment of conditions to the dismissal can be weighed with the equities in determining whether dismissal is appropriate. *See Arias*, 776 F.3d at 1273. In several cases, courts have required the plaintiff, as a condition of the dismissal, to pay the costs of the first litigation upon refiling the action. *See, e.g.*, *id.*; *Pontenberg*, 282 F.3d at 1256; *McCants*, 781 F.2d at 860. The Court in *Pontenberg* explained that Rule 41(d) gives the dismissing Court the authority to require the plaintiff to pay the defendant's costs of the first litigation upon refiling. 252 F.3d at 1256 n.2; Fed. R. Civ. P. 41(d). Where the subsequent suit between the parties is similar to the dismissed suit, it may be appropriate to limit costs to the expenditures incurred in discovering information that will not be useful in the later suit. *McCants*, 781 F.2d at 860.

6

**B.    There is no clear legal prejudice to Jackson in granting the motion for dismissal without imposing any additional conditions.**

As an initial matter, Plaintiffs' argument that this Court must dismiss the action because the Court lacks subject matter jurisdiction over the case is facially incorrect.  While the Court may not have jurisdiction over the § 1983 claim, there is no dispute that the Court has jurisdiction over the remaining Title VII claims. The Court could, therefore, dismiss the § 1983 claim and proceed to summary judgment on the Title VII claim.

While Plaintiffs are incorrect in asserting that the Court must grant dismissal, I still must consider whether the Court should grant the motion for voluntary dismissal.  Opposing the motion, Jackson presents two types of prejudice that he asserts he will suffer if the case is dismissed without prejudice: (1) he has expended considerable time and expense litigating the case to this point, (Doc. 101 at 3-4); and (2) he is entitled to a ruling on the pending summary judgment motion, (*id.* at 5).

**1.    The mere fact that there is a pending summary judgment motion is insufficient to establish prejudice.**

It is clear that, even though Jackson has filed a motion for summary judgment, it is still within this Court's discretion to allow for voluntary dismissal without prejudice.  *See Pontenberg*, 252 F.3d at 1258.  I see no reason in this case

to depart from the rationale in *Pontenberg* and other Eleventh Circuit cases permitting dismissal under similar circumstances.

>  2.  **The Plaintiffs are not the cause of Jackson having expended more time and money than necessary on the litigation.**

Jackson's argument that he has spent time and money litigating the case is also unpersuasive.  Jackson correctly points out that the Plaintiffs could have acknowledged the futility of their § 1983 claim earlier.  But, the same is true of Jackson.  In fact, based on the development of case law, it may have been an entirely appropriate strategy for Plaintiffs not to have conceded the immunity issue, at least until early 2015.  Jackson, on the other hand, could have asserted an Eleventh Amendment defense at any point during the litigation.

>  a.  **Development of Eleventh Circuit law on Eleventh Amendment immunity for sheriffs in Georgia in the employment context.**

In 2003, the Eleventh Circuit issued an *en banc* decision concerning the immunity of Georgia sheriffs in a § 1983 excessive force case.  *Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003) (*en banc*).  The Circuit reiterated four factors that are to be considered in deciding whether an entity is an "arm of the state" with respect to a particular function, and thus entitled to Eleventh Amendment immunity.  *Id.* at 1309.  After discussing the pertinent factors, and discussing how Georgia sheriffs are treated under Georgia law both generally and specifically in

8

relation to establishing a use-of-force policy, the Circuit held that the sheriff acted as an arm of the state with respect to the function in question, and therefore was entitled to Eleventh Amendment immunity. *Id*. at 1328.

In January 2015, the Circuit took up the issue of whether a Georgia sheriff was also entitled to Eleventh Amendment immunity in face of a § 1983 employment discrimination claim. *Pellitteri v. Prine*, 776 F.3d 777 (11th Cir. 2015). The Court in *Pellitteri* considered the *Manders* factors and held that, on balance, a County sheriff under Georgia law is an arm of the state, and therefore entitled to Eleventh Amendment immunity. *Id*. at 783.

In reaching its holding, the *Pellitteri* panel referred to the Court's previous unpublished (and therefore not binding) 2012 decision that Georgia sheriffs were not entitled to Eleventh Amendment immunity for employment decisions. *See Keene v. Prine*, 477 F. App'x 575, 577 (11th Cir. 2012). The *Pellitteri* panel concluded that the panel decision in *Keene* was incorrect in its discussion of the *Manders* factors. *See Pellitteri*, 776 F.3d at 781-82.

> **b.** **Plaintiffs should not have been expected to dismiss their claims pre-*Pellitteri*, and both parties are equally responsible for not raising *Pellitteri* as a reason the case should be dismissed after it was decided.**

In light of *Manders*, it should have been clear from the outset of this litigation that Eleventh Amendment immunity was a viable defense against the

§ 1983 count.  Nevertheless, in his Rule 12(b)(6) dismissal motion, which included various immunity defenses, Jackson did not move to dismiss the § 1983 claim against him on Eleventh Amendment grounds.  (*See* Doc. 6.)  The conclusion that Jackson had a viable Eleventh Amendment defense before *Pellitteri* was issued is evidenced by the fact that Jackson gave notice of the defense in an amended answer in May 2014, months before the *Pellitteri* decision.  (Doc 31.)

On the other hand, while the Eleventh Amendment defense was certainly viable for a sheriff in Georgia before *Pellitteri*, it was not clearly established that the defense would be successful in the employment context until *Pellitteri* was decided.  This is particularly true in light of the fact that the Eleventh Circuit issued an unpublished opinion post-*Manders* that reached a conclusion that the Eleventh Amendment did not apply to sheriffs in the employment context.  *See Keene*, 477 F. App'x 575.

Jackson suggests that the Plaintiffs should have realized their case was subject to dismissal under the Eleventh Amendment at an earlier time.  However, the filing of the complaint, Jackson's motion to dismiss, and Jackson's amended answer indicating an Eleventh Amendment defense all occurred before *Pellitteri* was issued.  Any suggestion that the Plaintiffs should have voluntarily dismissed the case at any of those junctures is unconvincing.

The first mention of *Pellitteri* in this litigation by either party was in Jackson's motion for summary judgment, in response to which the Plaintiffs moved for voluntary dismissal. (*See* Docs. 79, 98.)  After *Pellitteri* was decided, the parties jointly moved for an extension of the discovery period on two separate occasions. (*See* Docs. 72-75.)  If the Plaintiffs bear any responsibility for allowing the litigation to go forward after *Pellitteri* was decided, Jackson shares in that responsibility.

### 3.    Protecting Jackson's interests and weighing the equities, Plaintiffs' voluntary dismissal motion should be granted.

In light of the above, and bearing in mind Jackson's interest and weighing the equities, I find that it would be appropriate to grant Plaintiffs' motion for voluntary dismissal.  I do not find that it would be appropriate or necessary to impose any conditions—including the direction that Plainitffs pay Jackson's costs—on the dismissal at this juncture.  I reach that conclusion both because (a) I find no fault in the way that Plaintiffs handled the litigation that is not equally shared by Jackson; and (b) as the Plaintiffs have expressed an intention to refile their claims in state court, (Doc. 98-1 at 20), it appears likely that they will have to pay some portion of Jackson's costs as a prerequisite to taking advantage of Georgia's renewal statute, O.C.G.A. § 9-11-41(d).  *See Little v. Walker*, 250 Ga.

854, 855 (1983) (affirming that paying the costs of a previous litigation is a jurisdictional prerequisite to filing a second suit under the renewal statute).

## IV.   Conclusion

In light of the foregoing, I **RECOMMEND** that Plaintiffs' motion for voluntary dismissal, (Doc. 98), be **GRANTED** without the imposition of any additional conditions.   I further **RECOMMEND** that Jackson's motion for summary judgment, (Doc. 79), be **DENIED AS MOOT**.

IT IS SO RECOMMENDED this 8th day of February, 2016.

_____
JOHN K. LARKINS III
United States Magistrate Judge